UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BRONCO MORGAN,                          )
                                        )
                    Plaintiff,          )
                                        )
            v.                          )   No. 2:26-cv-00266-JRO-MG
                                        )
GARDENER,                               )
SCAIFE,                                 )
BRIAN KMETZ,                            )
CLEMONS,                                )
STOCK,                                  )
MAGGIE BRYANT,                          )
STAFFORD,                               )
LAURA RASMUSSEN,                        )
ISSAC,                                  )
GAUNT,                                  )
                                        )
                    Defendants.         )

**ORDER DISMISSING COMPLAINT AND
DIRECTING FILING OF AMENDED COMPLAINT**

Plaintiff Bronco Morgan is a prisoner currently incarcerated at Wabash Valley Correctional Facility. On April 15, 2026, Morgan filed this civil action under 42 U.S.C. § 1983, alleging that the Defendants violated his constitutional rights by refusing to do anything about black mold in his cell while he was incarcerated at Correctional Industrial Facility ("CIF"). Dkt. 1. Because Morgan is a "prisoner," the Court must screen his complaint before the case may proceed. 28 U.S.C. § 1915A(a), (c).

**I. SCREENING STANDARD**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief

1

against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. THE COMPLAINT

Morgan's factual allegations, summarized here, are accepted as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023). Morgan names the following Defendants, all of whom worked at CIF during the relevant time: (1) Warden Gardener; (2) Deputy Warden Scaife; (3) Safety Hazard Manager Brian Kmetz; (4) Unit Team Manager Clemons; (5) Health Services Administrator Stock; (6) Warden Designee Maggie Bryant; (7) Grievance Specialist Stafford; (8) Grievance Specialist Laura Rassmussen; (9) Sargent Isaac; and (10) Lieutenant Gaunt. Dkt. 1.

On October 20, 2024, Morgan moved to 4D within CIF. *Id.* at 3. This cell was right next to the bathroom, which made it extremely humid and susceptible

2

to mold. *Id.* at 9. Morgan immediately began to have an allergic reaction to visible black mold in his cell and the bathroom. *Id.* at 3. He experienced coughing, sneezing, wheezing, nose bleeds, shortness of breath, headaches, and nausea. *Id.* at 3–5. Morgan went to medical, but a nurse told him that there was nothing she could do because he was not displaying any current symptoms. *Id.* at 5.

Morgan filed a grievance on November 6, 2024. *Id.* at 6; *see* dkt. 1-1 at 1.[1] On November 8, Kmetz assessed the mold in Morgan's cell, but after seeing the mold he said that it was "mildew" and that Mr. Morgan's symptoms were not real. *Id.* at 6–7. Kmetz also reported that he spoke with Lt. Gaunt and Clemons about addressing the cell conditions. *Id.* at 12. On November 14, Rasmussen responded to the grievance with the following statement:

> I reviewed your grievance regarding alleged "mold" in the unit and your health concerns. I contacted Safety Hazard Manager Kmetz and he provided the following statement: On 11/8/2024, I was given a grievance for suspected mold growth on the unit. I went to the unit to investigate and found no signs of mold. I did find signs of mildew and soap scum build-up. I spoke to the housing Lieutenant Gaunt and UTM Clemons and advised them that the bathrooms will need to be deep cleaned, and daily cleaning will be needed moving forward to prevent a reoccurrence. I spoke to custody Sergeants and stressed the importance of having dorm detail workers out on every shift to prevent this from happening. I will be notified by Lt. Gaunt once the bathrooms are ready to be inspected. Brian Kmetz, Safety Hazard Manager- A plan of correction has been put in place to get the mildew issues on the unit addressed. The health symptoms you claim you have would not be caused by mildew. I did contact medical to ensure you had been seen and HSA Stock stated that you were examined on 11/2 and did not exhibit any signs of the symptoms you stated in your grievance at the time. You were advised by her to

---

[1] The documents attached as exhibits to the complaint are deemed to be part of the complaint for all purposes and are properly considered by the court at screening. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (the court may consider "documents that are attached to the complaint, documents that are central to the complaint and referred to in it.").

3

contact medical if things changed. I found no evidence that the conditions on the unit put your health at risk. The mildew will be addressed as soon as possible. I can offer no further relief.

Dkt. 1-1 at 2 (spelling corrected).

That same day, Lt. Gaunt took pictures of the mold and remarked that it was "terrible." *Id.* at 8. Sgt. Isaac made the cleanup crew scrub the showers, but it did not effectively remove the mold. *Id.*

On November 17, Mr. Morgan went to medical and saw a nurse who referred him to the physician to discuss a "possible mold allergy." *Id.*; dkt. 1-1 at 9. On November 22, Mr. Morgan saw the physician, who prescribed an albuterol pump for his respiratory symptoms. *Id.* at 9. Mr. Morgan alleges that this prescription contradicts Rasmussen and Stock's responses to his grievances on November 14, which stated that he did not exhibit any symptoms during his November 2 appointment and there was no evidence of cell conditions that put his health at risk. *Id.* at 10.

On November 26, Bryant denied Morgan's appeal of the November 6 grievance. Dkt. 1-1 at 6. The denial stated that Kmetz did not discover black mold and that steps were taken to clean the unit from mildew. *Id.*

On December 19, Morgan cleaned the mold with his own cleaning supplies after Defendants still declined to fix the issue. *Id.* at 11. Since he did not have any protective equipment, he experienced respiratory issues. *Id.*

On March 5, 2025, Morgan was moved to another cellhouse. *Id.* at 13. Only then did he begin to feel relief from the respiratory issues caused by the mold. *Id.*

4

Morgan seeks monetary damages and an injunction reversing his conduct history. *Id.* at 15–16.

### III. DISMISSAL OF COMPLAINT

Applying the screening standard to the facts alleged in the complaint, the complaint must be dismissed for failure to state a claim upon which relief may be granted.

First, the Court **dismisses** claims against Gardener, Scaife, Clemons, Stock, Bryant, Rasmussen, and Stafford because the complaint does not sufficiently allege that these individuals were individually liable for violating Morgan's constitutional rights. "[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). Specifically, "[t]he plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.* Section 1983 does not recognize vicarious liability, or a supervisor's liability for his or her subordinate's conduct. *Iqbal*, 556 U.S. at 676.

Here, the complaint alleges that each of the above Defendants had a general awareness of Morgan's cell conditions because he wrote letters to them or filed grievances. However, there are no facts allowing the Court to infer that any of the above Defendants personally contributed to the alleged constitutional violations. Mere "knowledge of a subordinate's misconduct is not enough for liability." *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) (en banc). Indeed, "inaction following receipt of a complaint about someone else's conduct

5

is [insufficient]." *Estate of Miller by Chassie v. Marberry*, 847 F. 3d 425, 428 (7th Cir. 2017); *see Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("[The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care.  That can't be right.").

Moreover, administrative officials, such as grievance specialists, are not personally liable for simply acting within the scope of their administrative duties. The Seventh Circuit recognizes that, as bureaucracies, prisons divide tasks. *Burks*, 555 F.3d at 595. "[N]o prisoner is entitled to insist that one employee do another's job" and "people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen." *Id.* Here, the records attached to Morgan's complaint demonstrate that the grievance specialists responded to Morgan's grievances according to their roles—by investigating the issues and then reporting the results to Morgan. Without more facts, the Court cannot infer that the grievance specialists condoned or actively turned a blind eye to Morgan's cell conditions. *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (explaining that personal liability arises when an administrator "knows about unconstitutional conduct and facilitates, approves, condones, or turns a blind eye to it").

6

Second, the Court **dismisses** claims against Kmetz, Lt. Gaunt, and Sgt. Isaac for failure to state a claim. Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Prison officials violate the Eighth Amendment by displaying deliberate indifference to an objectively serious condition that posed "an excessive risk to his health and safety." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021). Deliberate indifference requires more than negligence or even objective recklessness. *Id.* Rather, Morgan must adequately allege that "an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Importantly, "Evidence that the defendant responded reasonably to the risk, even if he was ultimately unsuccessful in preventing the harm, negates an assertion of deliberate indifference." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (citing *Farmer*, 511 U.S. at 844). This is because when officials take attempt to resolve problems, they "demonstrate a commitment to addressing the problem," which is "the antithesis of the callous disregard required to make out an Eighth Amendment claim." *Id.*

Here, Morgan's allegations and the records attached to his complaint demonstrate that once Kmetz, Lt. Gaunt, and Sgt. Isaac became aware of his cell conditions, they investigated and then coordinated cleaning efforts. The fact that the Defendants were not 100% successful or correct about the diagnosis of the condition does not suggest deliberate indifference. "It is always possible to do more or move faster, but the existence of policies that may have been more

effective does not mean an official recklessly disregarded the risk of harm."
*Rasho*, 22 F.4th at 711; *see also Hickingbottom v. Holcomb*, 2026 WL 311964, at
*3 (7th Cir. Feb. 5, 2026) (unpublished) (affirming summary judgment for IDOC
officials where they made efforts to get rid of mold, but it persisted anyway).
Thus, the complaint's allegations and supporting documents prevent the Court
from inferring that Kmetz, Lt. Gaunt, or Sgt. Isaac plausibly violated Morgan's
Eighth Amendment rights.

Third, Morgan's request for vacating his conduct history is not a cognizable
form of relief in this case. A request for injunctive relief must be tied to the
plaintiff's claims in the lawsuit. *See DeBeers Consol. Mines v. United States*, 325
U.S. 212, 220 (1945) (denying injunctive relief for a matter "lying wholly outside
the issues in the suit" because injunctive relief is only appropriate "to grant
intermediate relief of the same character as that which may be granted finally");
*Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund,* 527 U.S. 308, 326
(1999) (where the requested injunction relates to matters "lying wholly outside
the issues in the suit," an injunction is beyond the power of the Court) (quoting
*De Beers Consol. Mines,* 325 at 220); *see also Benisek v. Lamone,* 585 U.S. 155,
161 (2018) (The "purpose of a preliminary injunction is merely to preserve the
relative positions of the parties until a trial on the merits can be held.") (internal
quotations omitted). Morgan's complaint alleges that the Defendants violated his
Eighth Amendment rights by neglecting to adequately address the black mold in
his cell. This has nothing to do with his conduct history. Accordingly, this Court
lacks authority to grant the relief requested. *See Pacific Radiation Oncology, LLC*

8

*v. Queen's Medical Center*, 810 F.3d 631, 636 (9th Cir. 2015) (holding that absent a nexus between underlying claims and request for injunctive relief, district court has no authority to grant injunctive relief) (citing *DeBeers Consol. Mines*, 325 U.S. at 220). Therefore, Morgan's request for his conduct history to be vacated may not proceed in this case.

Because the Court has been unable to identify a viable claim for relief against any particular defendant, the complaint is subject to dismissal.

### IV. OPPORTUNITY TO FILE AN AMENDED COMPLAINT

In the interest of justice, the Court will allow Morgan to amend his complaint if, after reviewing this Court's order, he believes that he can state a viable claim for relief, consistent with the allegations he has already made. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) ("We've often said that before dismissing a case under 28 U.S.C. § 1915(e)(2)(B)(ii) a judge should give the litigant, especially a pro se litigant, an opportunity to amend his complaint."); *Luevano v. Wal-Mart*, 722 F.3d 1014 (7th Cir. 2013).

Morgan shall have **through August 31, 2026, to file an amended complaint**.

The amended complaint must (a) contain a short and plain statement of the claim showing that the plaintiff is entitled to relief, which is sufficient to provide the defendant with fair notice of the claim and its basis; (b) include a demand for the relief sought; and (c) identify what injury he claims to have suffered and what persons are responsible for each such injury. The **clerk is directed** to include a copy of the prisoner civil rights complaint form along with

the plaintiff's copy of this Order, which he must use if he files an amended complaint. *See* Local Rule 8-1 (requiring pro se plaintiffs to use the clerk-provided form for claims under 42 U.S.C. § 1983).

The amended complaint should have the proper case number, **2:26-cv-00266-JRO-MG,** and the words "Amended Complaint" on the first page. The amended complaint will completely replace the original. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture."). Therefore, it must set out every defendant, claim, and factual allegation Morgan wishes to pursue in this action.

If Morgan files an amended complaint, it will be screened pursuant to 28 U.S.C. § 1915A(b). If no amended complaint is filed, this action will be dismissed without further notice or opportunity to show cause.

**SO ORDERED.**

Date:  7/31/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

BRONCO MORGAN
209989
WABASH VALLEY - CF
Wabash Valley Correctional Facility
6908 S. Old US Hwy 41
CARLISLE, IN 47838